IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **STAR EQUITY FUND, LP** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Case No.: SAG-25-00677** |
| **v.** | * | |
| | * | |
| **FIRSTHAND CAPITAL MANAGEMENT, INC.,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Star Equity Fund, LP ("Plaintiff") brings this action against Firsthand Capital Management, Inc. ("Firsthand"); Scalar, LLC; Kevin Landis; Nicholas Petredis; Greg Burglin; Kimun Lee; Rodney Yee; Omar Billawala; and nominal defendant Firsthand Technology Value Fund, Inc ("the Fund") (collectively, "Defendants"). ECF 6. Various groupings of the Defendants have now filed motions to dismiss, ECF 31, 36, 38, which Plaintiff has opposed, ECF 54. Defendants then filed replies. ECF 62, 63, 64. Also pending are two motions to file documents under seal, ECF 53, 58, which will be granted. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' motions to dismiss will be granted.

### I.   BACKGROUND

The following facts are derived from Plaintiff's complaint, ECF 6, and are assumed to be true for purposes of these motions.

The Fund operates as a closed-end investment company and business development company. *Id.* ¶ 21. Plaintiff is the largest owner of the Fund's common stock. *Id.* ¶ 8. Firsthand,

an investment adviser, manages the Fund. *Id.* ¶ 10. Firsthand charges the Fund a management fee of 2% of the Fund's assets along with a 20% performance fee. *Id.* ¶ 34. Defendant Landis is the Chief Executive Officer of both Firsthand and the Fund and serves as Chairman of the Fund's Board. *Id.* ¶ 12. Defendants Burglin and Lee also serve as members of the Fund's Board, and Defendants Petredis and Yee previously served on the Board. *Id.* ¶¶ 13–15. Defendant Billawala previously served as the Fund's Chief Financial Officer. *Id.* ¶ 16.

The Fund publishes its net asset value per share to its investors on a quarterly basis. *Id.* ¶ 24. The net asset value per share is the sum of the value of the Fund's investments, minus its liabilities, divided by the number of outstanding shares. *Id.* The Fund's Board has a non-delegable duty to determine the fair value of the Fund's investments. *Id.* ¶ 25. However, the Board could and did retain an independent valuation firm, Scalar, to assist in this process. *Id.* ¶¶ 11, 28. Specifically, Scalar provides an initial valuation of each investment, a Valuation Committee composed of members of the Board reviews those valuations and approves them for incorporation into the Fund's net asset value, and the Board then ratifies those determinations. *Id.* ¶¶ 11, 27–28.

Most of the Fund's investments are categorized as "Level 3," which indicates that they constitute the most difficult type of securities to value. *Id.* ¶ 64. Three companies, Wrightspeed, Inc., IntraOp Medical Corp., and Hera Systems, Inc., comprised a significant share of the Fund's portfolio during the time relevant to Plaintiff's claims. *Id.* ¶¶ 52–53.

Wrightspeed is a private company developing an electric drive system for vehicles. *Id.* ¶ 66. It has never generated revenue. *Id.* Landis is the CEO of Wrightspeed and a member of its board. *Id.* In or around 2021, Firsthand changed its prediction of Wrightspeed's chances of failure from 30% to 90%. *Id.* ¶ 72. At this time, Wrightspeed sought a cash infusion through merger with a special purpose acquisition company. *Id.* ¶ 75. Firsthand adjusted the value of the Fund's equity

holdings in Wrightspeed to reflect the 90% predicted chance of failure but did not adjust the value of the Fund's debt holdings even though Wrightspeed reported only $5 million in assets compared to $21 million in liabilities. *Id.* ¶¶ 74, 78. In mid-2022, Firsthand and Scalar adjusted their valuation of Wrightspeed slightly in response to Wrightspeed laying off 20% of its workforce. *Id.* ¶ 83. At some point, Firsthand also informed the Board that Wrightspeed "is moving towards a dissolution/wind down." *Id.* ¶ 84. Firsthand again slightly adjusted its valuation of Wrightspeed to reflect a predicted 80% chance that debt holders would receive the full value of their notes. *Id.* ¶ 86.

In August, 2022, Firsthand informed the Board that Wrightspeed was attempting a crowdfunding effort to raise capital but "still considering a shutdown." *Id.* ¶ 89. Firsthand and Scalar reduced their valuation of Wrightspeed to reflect a 50% probability of debt holders collecting the full value of their notes. *Id.* ¶ 90. By early 2023, Wrightspeed had laid off the majority of its employees, was failing to pay rent, and had largely failed in its crowdfunding effort. *Id.* ¶ 93. Firsthand and Scalar again reduced the valuation to reflect a 25% chance of debt holders collecting the full value of their notes. *Id.* ¶ 95. In May, 2023, the Board was advised that Wrightspeed was liquidating its assets, and Firsthand and Scalar adjusted their valuation to reflect a 5% chance of debt holders collecting the full value of their notes. *Id.* ¶¶ 97–98. Then, at some point in the third quarter of 2023, Wrightspeed's landlord seized all of the company's physical assets located at its former leased space to liquidate them for past due rent. *Id.* ¶ 101. Plaintiff alleges that Landis, as Wrightspeed's CEO, must have known of this occurrence before it was disclosed to the Board in November, 2023, when Defendants valued the investment in Wrightspeed at $0. *Id.* ¶¶ 103–04.

IntraOp is a company developing a system for electron-beam radiation cancer therapy. *Id.* ¶ 106. Landis serves as a member of its board. *Id.* ¶ 107. To calculate their valuation of the Fund's investment in IntraOp, Firsthand and Scalar compared it to several established medical device and pharmaceutical companies, most of which had revenue of at least $1 billion and only two of which were unprofitable. *Id.* ¶¶ 114–16. Scalar stated in materials provided to the Board that IntraOp was "significantly smaller," "significantly less profitable," and "experiencing revenue growth that is significantly lower than the guideline public companies." *Id.* ¶ 117. In March, 2022, the Board received materials showing that IntraOp had assets totaling $18 million compared to $51.6 million in liabilities. *Id.* ¶ 121. Firsthand's valuation at this point reflected $0 in equity but a prediction of 100% recovery on its debt held by IntraOp. *Id.* ¶¶ 123, 126. Following the resignation of IntraOp's CEO and an increase in its liabilities, Firsthand and Scalar adjusted their valuation to reflect a prediction of recovery of 80% of the Fund's outstanding debt in the company. *Id.* ¶¶ 125–26. In March, 2023 the Board learned that IntraOp had taken on additional debt from more senior creditors, and Firsthand and Scalar decreased their valuation. *Id.* ¶¶ 129–30. In November, 2023, they decreased their valuation again to only $168,000. *Id.* ¶ 134.

Plaintiff alleges that Firsthand was financially motivated to inflate the value of the Fund's investments in Wrightspeed and IntraOp in order to delay reputational damage caused by the Fund's poor performance, inflate the Fund's assets used to calculate Firsthand's management fee, preserve its position as the Fund's manager, and avoid or delay litigation stemming from the Fund's collapse. *Id.* ¶ 197. Plaintiff further alleges that the Defendants serving on the Fund's Board were motivated to inflate the value of the investments in order to avoid reputational damage, associated litigation risks, and the likelihood that they would lose their positions and salaries as Board members. *Id.* ¶ 199.

In November, 2024, the Fund's final substantial asset, Hera, was sold to a third-party acquiror, and the Fund received $6.1 million from the sale. *Id.* ¶¶ 190–91. The Fund had invested nearly $18 million in Hera. *Id.* ¶ 191. Firsthand allocated most of the proceeds from the sale to itself to pay its past due management fees. *Id.* ¶ 192. The Fund's remaining investments are not expected to generate material value. *Id.* ¶ 194.

## II.   LEGAL STANDARDS

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

To state a claim for securities fraud, a plaintiff must also satisfy the heightened pleading requirements contained in Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *In re Under Armour Sec. Litig.*, 409 F. Supp. 3d 446, 452–53 (D. Md. 2019). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The PSLRA, in turn, requires courts "to dismiss any securities fraud complaint that does not 'state with particularity facts giving rise to a strong inference that the defendant acted' with scienter." *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 623 (4th Cir. 2008) (quoting 15 U.S.C. § 8u-4(b)(2)). In determining whether the facts alleged give rise to a strong inference of scienter, the court must consider plausible opposing inferences and dismiss the complaint unless the inference of scienter is "at least as compelling" as any opposing inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323–24 (2007).

## III.  DISCUSSION

Following Plaintiff's voluntary dismissal of three derivative claims that it had initially brought, *see* ECF 56, three claims remain. Count I alleges a violation of § 10(b) of the Securities Exchange Act of 1934 and its implementing regulation, Securities and Exchange Commission Rule 10b-5. ECF 6 at ¶¶ 221–29. Count II alleges a violation of § 20(a) of the Securities Exchange Act of 1934. *Id.* ¶¶ 230–36. And Count V alleges a claim for appointment of a receiver. *Id.* ¶¶ 250–54. Defendants challenge each of these claims, which this Court will address in turn.

### A.  Count I

To state a claim under § 10(b) and Rule 10b-5, a private plaintiff must allege (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) proximate causation between the misrepresentation or omission and the

economic loss. *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 181 (4th Cir. 2009). In this context, scienter means "intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)).

Plaintiff alleges that Defendants made misrepresentations through the inflated net asset values published to shareholders such as itself. ECF 6 at ¶ 223. The parties agree that these valuations constituted opinions. *See* ECF 54 at 20. Statements of opinion are actionable only if the speaker does not honestly believe them and they lack a reasonable basis. *Emps.' Ret. Sys. of Baton Rouge & E. Baton Rouge v. Macrogenics, Inc.*, 61 F.4th 369, 387 (4th Cir. 2023). Failure to disclose every fact that does not support an opinion does not necessarily render the opinion statement misleading. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015). Furthermore, "[t]he PSLRA reflects Congress's determination that liability for securities fraud should not be predicated solely on an overly optimistic view of a future which may, in fact, encounter harsh economic realities down the road." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017).

Plaintiff alleges that, for years, Defendants "knew" Wrightspeed and IntraOp were doomed to fail and that the Fund's investments in these companies were "worthless." Therefore, according to Plaintiff, Defendants did not honestly believe the valuations ascribing some value to the investments and the valuations lacked a reasonable basis. This Court is not persuaded that Plaintiff's allegations suffice. Although, with the benefit of hindsight, the failure of these investments may appear as though it was a foregone conclusion, the complaint does not allege sufficient facts from which to infer that such failure was certain at the times of the allegedly inflated valuations.

7

Significant risk was inherent to the nature of the Fund as a business development company. A business development company, commonly referred to as a venture capital company, is defined in 15 U.S.C. § 80a–2(a)(48) as a "closed-end company" that invests in securities and provides managerial assistance to the issuers of those securities. *Goldstein v. SEC*, 451 F.3d 873, 878 n.4 (D.C. Cir. 2006). As a business development company, the Fund invested in development-stage companies like Wrightspeed and IntraOp, so it is not surprising that, as these companies developed their products, they had greater liabilities than revenue. That fact did not make the companies doomed to fail. The companies' products could realize their potential and become highly successful, or they might not, in which case investors would receive no return. The particular point at which it becomes "certain" that investors will receive no return is inherently subjective and difficult to discern.

As Defendants' predicted chance of each company's failure progressively increased, their valuations progressively decreased, and they eventually ascribed little to no value to each company. For example, Defendants decreased their valuations of Wrightspeed after each of several significant events, including Wrightspeed laying off 20% of its workforce, indicating it was considering dissolution, laying off the majority of its workforce, liquidating its assets, and its landlord seizing its physical assets. Following that last event, the Fund valued its investment in the company at $0.[1] Regardless of whether other investment managers may have made that determination sooner or later than Defendants did, this Court perceives no facts suggesting that

---

[1] Although the complaint alleges that Landis knew that Wrightspeed's landlord had seized its physical assets before the Board was informed of that fact in November, 2023, it does not allege that his knowledge would have impacted any valuation before the November, 2023 valuation of $0. The complaint alleges that the seizure of the physical assets occurred in the third quarter of 2023 but does not allege that it occurred before Defendants completed their August, 2023 valuation.

Defendants lacked a reasonable basis for continuing to ascribe some value to the company for the time that they did so. Indeed, even though the Fund's investment in Hera was a net loss, the Fund still derived some value from Hera's eventual sale. The facts alleged do not suggest that it was unreasonable for Defendants to believe that there existed some chance that Wrightspeed, or IntraOp, would generate some value in a similar way.

This Court acknowledges that Scalar informed the Board that IntraOp differed in significant ways from most of the companies used as comparators in calculating the valuation of the Fund's investment in that company. Because the complaint contains little additional information about the valuation process, however, this Court cannot conclude or infer that this methodology lacked a reasonable basis, particularly in light of the difficulty in valuing "Level 3" investments. This Court further acknowledges that Plaintiff has alleged facts suggesting that Firsthand and the Defendants who served on its Board had incentives to inflate the valuations. All of these facts could lead to a reasonable inference that Defendants knowingly inflated the valuations. As noted above, however, this Court also must consider opposing inferences and must dismiss the complaint unless the inference of scienter is "at least as compelling" as any opposing inference. *Tellabs*, 551 U.S. at 323–24. This Court finds the more persuasive inference to draw from all of the facts alleged is that Defendants were operating in a highly risky and subjective area and, in that context, calculated valuations in a reasonable and honest, even if necessarily imperfect, way.

Accordingly, under the heightened pleading standard applicable to this claim, this Court cannot conclude that Plaintiff has sufficiently alleged that Defendants made misrepresentations with scienter by inflating the valuations. This Court will therefore dismiss Count I without prejudice.

### B. Count II

To state a claim under § 20(a), a plaintiff must allege a predicate violation of § 10(b). *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 638–39 (D. Md. 2010). Because Plaintiff has failed to allege that predicate violation in Count I, Count II also must be dismissed. *See BearingPoint*, 576 F.3d at 192 (dismissing § 20(a) claim for failure to plead § 10(b) claim).

### C. Count V

Appointment of a receiver, which Count V purports to allege, is not an independent cause of action. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 298 F. Supp. 3d 834, 846–47 (W.D. Va. 2018) (dismissing appointment of a receiver claim because it did not state an independent cause of action). Plaintiff offers no response in defense of this claim. Accordingly, Count V also must be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss, ECF 31, 36, 38, will be granted and the complaint will be dismissed without prejudice. This case will be closed, subject to reopening should a motion seeking leave to file an amended complaint be filed within thirty days. Because this Memorandum Opinion references documents filed under seal, the Opinion will also be filed under seal. The parties are directed to confer and file a proposed redacted opinion for public filing within one week of the date of this Opinion. If the parties do not do so, this Opinion will be unsealed. A separate Order follows.

Dated: March 30, 2026            _____/s/_____
                                                 Stephanie A. Gallagher
                                                 United States District Judge